<u>**NOT FOR PUBLICATION**</u>                                  (Docket Nos. 30, 34)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
PETER EDWIN STUYVESANT,          :
                                 :
          Plaintiff,             :
                                 :
     v.                          :    Civil No. 05-5254 (RBK)
                                 :
UNITED STATES OF AMERICA,        :
                                 :
          Defendant.             :
                                 :
_____  :

## <u>O P I N I O N</u>

**Kugler**, United States District Judge:

     Before the Court is a motion by pro se Plaintiff Peter Edwin
Stuyvesant ("Plaintiff") for an extension of time to file an
affidavit of merit and a cross-motion by Defendant United States
("Defendant") to change venue, and to dismiss the malpractice
claims originating in New Jersey.  For the reasons provided
below, the Court grants Defendant's motions and denies
Plaintiff's motion.

## I. BACKGROUND

     Plaintiff entered Federal Correctional Institute  ("FCI")
Fairton, New Jersey on April 3, 1992.  Plaintiff alleges he had a
medical condition that affected his liver prior to his arrival at
FCI Fairton, and that Plaintiff's primary physician notified
officials at FCI Fairton of his condition.  Moreover, Plaintiff

1

alleges that he notified officials during his intake interview at
FCI Fairton, and again at sick call on April 8, 1992.  Plaintiff
states that the prison officials placed Plaintiff on a chronic
care program on April 13, 1992 to monitor his condition
throughout his period of incarceration.  Plaintiff was in this
program until his release from FCI Fort Dix on August 10, 2006.

On October 19, 1992, Plaintiff alleges that the medical
staff at FCI Fairton found that Plaintiff "did not exhibit the
hepatitis B virus" as originally diagnosed by his primary care
physician.  In addition, the prison physicians indicated that
Plaintiff was "free of hepatitis" at that time.

By August 9, 1995, Plaintiff alleges that the medical staff
noticed symptoms of hepatitis C, and ordered testing which never
occurred.  Plaintiff alleges that a physician prescribed a course
of treatment for him, which the prison staff did not follow.  He
alleges that the prison failed to treat his condition until
February 1999, when another doctor ordered testing, yet "cleared
Plaintiff for transfer" to another facility before the testing
results came back.  As a result, Plaintiff alleges that the
institution to which the Bureau of Prisons transferred him was
uncertain of his status.

Plaintiff further alleges that the prison medical staff
finally diagnosed him with hepatitis C in December 2001 while
Plaintiff was at FCI Ray Brook, New York.  By this time,

2

Plaintiff alleges the virus had already devastated his body, and he had "Stage IV/End Stage Liver Cirrhosis." Plaintiff also states that prison medical staff in Rochester, Minnestoa refused Plaintiff's request for interferon treatment or a liver transplant.

Plaintiff states the he contracted hepatitis C from a cell mate who used Plaintiff's razor to shave when Plaintiff was out of the cell on work assignment.  Plaintiff states that this cell mate carried various strains of hepatitis, and infected numerous other cell mates prior to Plaintiff through the cell mate's "unsanitary behavior."  Plaintiff alleges that the Bureau of Prisons was aware of the cell mate's history but did nothing to protect Plaintiff or others from this individual.

Plaintiff states that he exhausted his administrative remedies as required by the Prisoner Litigation Reform Act, and then filed this claim under the Federal Tort Claims Act, 28 U.S.C. § 1346 ("FTCA") on November 3, 2005.  In his complaint, Plaintiff alleges that the negligence by Bureau of Prisons personnel caused Plaintiff to suffer damages.[1]

On January 5, 2007, Plaintiff informed the Court via letter that the Bureau of Prisons released him on August 10, 2006 and that he would serve his supervised release in Natural Bridge, New

---

[1]    Plaintiff filed an amended complaint on January 17, 2006.

York.

On February 9, 2007, Plaintiff moved for an extension of time to file an affidavit of merit.  On February 27, 2007, Defendant moved to transfer this case to the Northern District of New York.  Defendant also moved to dismiss Plaintiff's medical malpractice claims that arose in New Jersey because Plaintiff failed to file an affidavit of merit.  Finally, Defendant opposed Plaintiff's motion for an extension of time to file the affidavit of merit.

## II.  MOTION TO TRANSFER

Defendant moves to transfer this case to the Northern District of New York for the convenience of the parties pursuant to 28 U.S.C. § 1404(a). Plaintiff does not directly oppose this motion for transfer.

Section 1404(a) of the United States Code provides that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. 1404(a). The burden of establishing the need for a transfer of venue rests with the moving party. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). When deciding a motion to transfer venue, a district court should remember that "the plaintiff's choice of venue should not be lightly disturbed." Id.

4

The decision whether to transfer a case lies within the broad discretion of the district court. It requires the court to make a "flexible and individualized analysis," and to "weigh in the balance a number of case-specific factors" to determine whether the proposed transferee district would be a more convenient forum for the litigation. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). The statute enumerates three factors a district court should consider when deciding a motion to transfer under 1404(a), including (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. 28 U.S.C. § 1404(a).  The Supreme Court enumerated additional factors for a district court to consider, which are grouped into two broad categories: private interest factors and public interest factors. Mendoza v. U.S. Custom and Border Prot., No. 05-6017, 2007 WL 842011, at *3 (D.N.J. Mar. 19, 2007) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947)).

> The private interest factors incorporate the preferences of the parties in the context of the litigation, and include (1) the choice of forum of the plaintiff; (2) the defendant's preference; (3) the ease of access to sources of proof; (4) the convenience of the witnesses-only to the extent that a witness may actually be unavailable for trial in one of the fora; and (4) where the claim arose. The second category analyzes the public interest including (1) practical considerations which could make the litigation easier and more expeditious, or inexpensive; (2) court congestion and administrative difficulties; (3) the local interest in resolving local controversies at home; and (4) the public policies of the fora.

Mendoza, 2007 WL 842011, at *3 (citing Jumara, 55 F.3d at 879).

Transferring this case to the Northern District of New York satisfies the enumerated factors.  As an initial matter, Plaintiff alleges that some of the acts or omissions of which he complains took place while Plaintiff was in FCI Ray Brook, New York, located in the Northern District of New York.  Therefore, Plaintiff this action "could have been brought" in the District of New York.  In addition, Plaintiff does not directly oppose the motion to transfer,[2] making deference to his choice of forum a less substantial factor.  Moreover, Plaintiff now resides in the Northern District of New York, and the Northern District of New York is the Defendant's preferred venue.  In addition, Plaintiff alleges negligence in three different locations, including FCI Fairton, FCI Ray Brook in New York, and FCI Rochester Wisconsin. Therefore, the witnesses and evidence are likely located in a variety of districts, and not just the District of New Jersey. Accordingly, this Court grants Defendant's motion to transfer this case to the Northern District of New York pursuant to 28 U.S.C. § 1404(a).

## III. MOTION TO DISMISS MALPRACTICE CLAIMS ORIGINATING IN NEW JERSEY

---

[2]     In his opposition papers, Plaintiff states, "[I]f this Court decides that a change of venue to the Northern District of New York at Syracuse would be desirable."  Plaintiff's main concern is that the Court transfer the case "without the release of any of the New Jersey medical malpractice claims or individuals that may be invovled in facilitating the origin of these claims."

6

Defendant further moves to dismiss any malpractice claims in the complaint that originated from Plaintiff's incarceration in New Jersey because Plaintiff failed to serve an affidavit of merit, as required by New Jersey's Affidavit of Merit Statute, N.J.S.A. § 2A:53A-27 et seq. (the "Statute").

Because Plaintiff brings this malpractice action pursuant to the FTCA, this Court will apply the law of the state of New Jersey. See Molzof v. United States, 502 U.S. 301, 305 (1992) (stating that the "extent of the United States' liability is under the FTCA is generally determined by reference to state law"); see also Horne v. United States, No. 06-3406, 20074 WL 683945, at *1 (3d Cir. 2007) (affirming a district court's decision to apply New Jersey law to a prisoner's claim of medical malpractice, brought under the FTCA, against medical staff at FCI Fairton).

The Statute provides

In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

N.J.S.A. § 2A:53A-27.[3]

The legislature intended the Statute to "weed out frivolous lawsuits early in the litigation while, at the same, ensuring that plaintiffs with meritorious claims will have their day in court." Ferreira v. Rancocas Orthopedic Assoc., 836 A.2d 779, 782-83 (N.J. 2003).  A plaintiff must file an affidavit of merit within 120 days of filing the defendant's answer or the plaintiff "face[s] dismissal of the complaint with prejudice, absent some equitable justification."  Knorr v. Smeal, 836 A.2d 794, 798 (N.J. 2003); see also Chamberlain v. Giampapa, 210 F.3d 154, 162 (3d Cir. 2000) (holding that affidavit requirement has been excused only under exceptional and compelling circumstances).

New Jersey courts use a "a fact-sensitive case-by-case analysis" when determining whether extraordinary circumstances exist so as to rise to the level of equitable justification. See, e.g., Hartsfield v. Fantini, 695 A.2d 259, 263 (N.J. 1997); Burns v. Belafsky, 741 A.2d 649, 653 (N.J. Super. App. Div. 1999) (stating "lack of diligence on the part of counsel" insufficient to constitute "extraordinary circumstances"). In Palanque v. Lambert-Woolley, 774 A.2d 501 (N.J. 2001), the New Jersey Supreme Court held that "attorney inadvertence would not constitute extraordinary circumstances" to excuse the late filing of the

---

[3]     The application of the Statute is enforceable in federal court when New Jersey law applies. Chamberlain v. Giampapa, 210 F.3d 154, 156 (3d Cir. 2000).

affidavit of merit. <u>Id.</u> at 505.

Moreover, the Statute does not excuse indigent pro se litigants from its requirements. "Procedural rules are not abrogated or abridged by plaintiff's pro se status." <u>Rosenblum v. Boro. of Closter</u>, 666 A.2d 1006, 1011 (N.J. Super. App. Div. 1995). If litigants choose to represent themselves, "they must understand that they are required to follow accepted rules of procedure promulgated by the Supreme Court to guarantee an orderly process. Such litigants are also presumed to know, and are required to follow, the statutory law of this State." <u>Tuckey v. Harleysville Ins. Co.</u>, 565 A.2d 419, 421 (N.J. Super. App. Div. 1989).

In this case, Plaintiff has yet to file an affidavit of merit. On February 9, 2007, Plaintiff moved for extension of time to file an affidavit of merit. Plaintiff argues that, at the time he filed this motion, there was also a motion pending before United States Magistrate Judge Donio, to "hold the scheduling order in abeyance," which Magistrate Judge Donio granted on June 12, 2007. In addition, Plaintiff argues that he consulted with an attorney in New York about this case, and that the New York counsel requires time to review the case files.

Although this Court is sympathetic to Plaintiff's position, this assertion does not rise to the level of "extraordinary circumstances" or "equitable justification" that would excuse the

late filing of the affidavit of merit.  Plaintiff's situation, as a pro se litigant, is akin to those cases where the New Jersey courts held that attorney inadvertence is not an "extraordinary circumstance."  As previously discussed, Plaintiff's status as a pro se litigant does not excuse him from the procedural requirements of the Statute.  See Horne, 2007 WL 683945, at *1 ("[Plaintiff's] pro se status does not excuse his failure to comply with the affidavit of merit requirement."). Therefore, the Court grants Defendant's motion to dismiss Plaintiff's medical malpractice claims that originated in New Jersey.  Accordingly, the Court denies Plaintiff's motion for an extension of time to file an affidavit of merit statute.

**IV. CONCLUSION**

For the reasons set forth above, this Court grants Defendant's motion to transfer this case to the Northern District of New York.  The Court also grants Defendant's motion to dismiss Plaintiff's medical malpractice claims that originated in New Jersey because Plaintiff failed to file an affidavit of merit, as required by New Jersey law.  Finally, the Court denies Plaintiff's motion for an extension of time to file an affidavit of merit.


Dated:6/29/2007                          s/Robert B. Kugler
                                         ROBERT B. KUGLER
                                         United States District Judge